# UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| SONIA CLARK | CIVIL ACTION |
| VERSUS | 16-585-SDD-RLB |
| RAILCREW XPRESS, L.L.C. AND<br>LINWOOD HUCKINS | |

## RULING

This matter is before the Court on the *Motion for Summary Judgment*[1] filed by Defendants, RailCrew Xpress, L.L.C. ("RCX") and Linwood Huckins ("Huckins")(or collectively "Defendants"). Plaintiff, Sonia Clark ("Plaintiff") has filed an *Opposition*[2] to this motion, to which Defendants filed a *Reply*.[3] For the reasons which follow, the Court finds that Defendants' motion should be granted.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff, an African-American female, became employed with RCX on or about September 16, 2014 as a full-time driver.[4] Plaintiff was hired by Huckins, Regional Manager for the Baton Rouge/Port Allen location of RCX, on the same day she interviewed.[5] RCX provides railroad companies with "24/7 on-call transportation for railway crew members."[6] Because RCX's business is "safely transporting people

---

[1] Rec. Doc. No. 24.
[2] Rec. Doc. No. 38.
[3] Rec. Doc. No. 42.
[4] Rec. Doc. No. 1, ¶ 14.
[5] Rec. Doc. No. 25-2 at 8-9 (Deposition of Sonia Clark, pp. 95-96).
[6] Rec. Doc. No. 24-4, ¶ 4 (Affidavit of Brian O'Hara, President and Chief Executive Officer of RCX).
Document Number: 48169

throughout the country, safety is critical to the company's success."[7]

Plaintiff alleges that she approached Huckins on March 27, 2015 to request a promotion to the Lead Driver position[8] in the presence of her immediate supervisor Monica Bourgeois ("Bourgeois"), the Branch Manager for the Baton Rouge/Port Allen location.[9] Plaintiff claims Bourgeois had previously advised her that a Lead Driver position was open.[10] However, in response to this request, Plaintiff alleges Huckins replied that he would "never have a female n****r as a lead driver under him!"[11] In a sworn *Declaration*, Bourgeois stated that she was present and heard Huckins respond to Plaintiff with this statement.[12] Plaintiff contends this was not the only time Huckins verbally abused her and claims he spoke to her and other African-American employees in a racially derogatory and discriminatory manner, creating a hostile work environment.[13]

Plaintiff contends Casey Portier, a Caucasian female, was promoted to the Lead Driver position after Plaintiff was terminated.[14] However, there is no record evidence that identifies Portier's race or gender. Further, Vice President of Operations Support for RCX Andrew Beck ("Beck") attested that, in the weeks leading up to and at the time of Plaintiff's accident, there were no Lead Driver positions available in the Baton Rouge/Port Allen location.[15] Sandy Walker ("Walker"), Vice President of Human Resources for RCX, also

---

[7] *Id.* at ¶ 5.

[8] Rec. Doc. No. 1, ¶ 16. Plaintiff's *Declaration* dated May 8, 2018, states that she requested a promotion from Huckins "on or about March 28, 2015." Rec. Doc. No. 38-2, ¶ 5.

[9] Rec. Doc. No. 38-2, ¶ 5.

[10] *Id.*, ¶ 6.

[11] Rec. Doc. No. 1, ¶ 17.

[12] Rec. Doc. No. 38-3, ¶ 11.

[13] Rec. Doc. No. 1, ¶ 18.

[14] Plaintiff cites the *Declaration* of Bourgeois, Rec. Doc. No. 38-3, ¶ 12; however, nowhere in this *Declaration* does Bourgeois identify Casey Portier as a "Caucasian female."

[15] Rec. Doc. No. 25-4, ¶ 5 (Affidavit of Andrew Beck, Vice President of Operations Support for RCX).

Document Number: 48169

attested that, "[o]n March 27-28, 2015, there was no available position for lead driver in the Baton Rouge/Port Allen location, nor was one expected to become available."[16]

Two days following Plaintiff's alleged request and denial for this promotion, on March 29, 2015, Plaintiff was involved in a motor vehicle accident when she was rear-ended in her company vehicle traveling on Highway 190 in East Baton Rouge Parish.[17] Plaintiff admits that she stopped in the left lane on U.S. Hwy 190 to make a left turn, and she was "forced to travel backwards a short distance in order to execute said turn."[18] Plaintiff claims that she was at a complete stop and "signaled to traffic of her intent to make a left hand turn on Highway 190 when suddenly and without warning she was rear ended."[19]  Plaintiff also notes that, Lieutenant Aaron Biddy ("Lt. Biddy") of the City of Livonia Police Department, who arrived on the scene of the accident that evening, did not ticket Plaintiff or find her at fault for the accident but cited the driver of the other vehicle for careless operation.[20]  Despite allegedly not being at fault, Plaintiff claims that she was terminated that very date by Huckins for being involved in a "preventable accident" allegedly due to Plaintiff's backing up the vehicle on Highway 190.[21]

RCX, on the other hand, paints a very different picture of these events.  RCX produced evidence that all transport vehicles are installed with recording devices provided by "lyxt Drive Cam."[22]  DriveCam video captures short video clips both inside and outside the vehicles when activated by "an unusual driving event."[23]  All DriveCam videos are

---

[16] Rec. Doc. No. 26-5, ¶ 3a (*Affidavit* of Sandy Walker, Vice President of Human Resources for RCX).

[17] Rec. Doc. No. 1, ¶ 19.

[18] Rec. Doc. No. 38 at 3, citing Plaintiff's *Declaration*, Rec. Doc. No. 38-2 at 3.

[19] Rec. Doc. No. 1, ¶ 20.

[20] *Declaration* of Lieutenant Aaron Biddy, Rec. Doc. No. 38-6, ¶¶ 6-7.

[21] Rec. Doc. No. 1, ¶ 21.

[22] Rec. Doc. No. 24-4, ¶ 6.

[23] *Id.* at ¶ 7.

Document Number: 48169

posted to the website for review by RCX.[24]   RCX contends that, on March 30, 2015, members of RCX's corporate management team, including Brian O'Hara ("O'Hara"), President and Chief Executive Officer of RCX, Director of Safety Risk and Corporate Claims Bryan Taylor ("Taylor"), and Vice President of Operations Support Beck, viewed the footage from Plaintiff's DriveCam recordings from the previous night.[25]

RCX claims this footage directly contradicted Plaintiff's report of the accident as a rear-end collision as it showed Plaintiff backing up in the left lane of travel on US 190 when she collided with the car approaching from behind.[26]   Asserting that Plaintiff "had no business driving for RCX and she had to be terminated as her actions were careless, reckless, stupid, and endangered lives,"[27] O'Hara attested that he immediately concluded Plaintiff should be terminated.   Beck, who viewed the DriveCam footage with O'Hara, attested that he also believed Plaintiff should have been terminated immediately as "such conduct was immediate grounds for termination … as she exhibited reckless and dangerous conduct that completely disregarded human life while driving an RCX vehicle."[28]   Both O'Hara and Beck attested that they had never heard of or seen Plaintiff before viewing this footage.[29]

On April 1, 2015, Beck sent an email to Huckins inquiring whether Plaintiff had been terminated.[30]   Huckins responded that he was "waiting on bryan,"[31] and Beck

---

[24] *Id.* at ¶ 8.
[25] *Id.* at ¶¶ 11-12.
[26] *Id.* at ¶ 13.
[27] *Id.* at ¶ 14.
[28] Rec. Doc. No. 25-4, ¶ 14 (Affidavit of Andrew Beck, Vice President of Operations Support for RCX).
[29] Rec. Doc. No. 24-4, ¶10; Rec. Doc. No. 25-4, ¶ 6.
[30] Rec. Doc. No. 25-4, ¶ 15, Exhibit B.
[31] *Id.* at 6.
Document Number: 48169

ultimately directed Huckins to "send in" Plaintiff's termination on that date.[32]   The Termination Report for Plaintiff dates her termination on March 29, 2015, the date of the accident, and cites the reason for termination as "M23 Preventable accident" with remarks stating "Sonia Clark backed the van up on a highway and had an accident."[33]   Although this document denotes Plaintiff's termination date as March 29, 2015, the date this document was signed and issued was April 1, 2015.[34]

Plaintiff disputes that the video footage submitted by Defendants is a complete and accurate depiction of the images taken on the night of the accident.  Plaintiff maintains that she was at a complete stop, and her van was in Drive when she was rear-ended. Plaintiff attests that she believed the recorder stopped permanently recording during most of the time she was stopped.[35]   Thus, Plaintiff contends Defendants' submitted footage makes it erroneously appear that Plaintiff backed into the car that rear-ended her.  Plaintiff cites the *Declaration* of Bourgeois who declared that she "was tasked with investigating Ms. Clark's accident and determining whether she caused the accident and/or violated any safety policy,"[36] and that, on March 29, 2015, she observed the video footage from Plaintiff's van on her iPad.[37]   Bourgeois also stated that the video footage provided by Defendants in discovery is "shorter and different" from the original footage she reviewed on the night of the accident.[38]   Nevertheless, Plaintiff concedes that, "upon reviewing the shortened footage closely, the images appear to be consistent with Ms. Clark's history of

---

[32] *Id.*
[33] Rec. Doc. No. 38-13.
[34] *Id.*
[35] Rec. Doc. No. 38-2, ¶ 29 (Plaintiff's *Declaration*).
[36] Rec. Doc. No. 38-3, ¶ 18 (*Declaration* of Monica Bourgeois).
[37] *Id.* at ¶ 19.
[38] *Id.* at ¶ 35.
Document Number: 48169

events."[39]

Additionally, Plaintiff contends that it was company policy to place a driver involved in a motor vehicle accident on suspension pending an investigation.[40] Plaintiff cites to the Bourgeois *Declaration* wherein Bourgeois declared that: (1) she was tasked with investigating this accident;[41] (2) she viewed the footage sent to her that evening;[42] (3) she spoke to Lt. Biddy who advised that Plaintiff was not at fault;[43] (4) she concluded that Plaintiff was not backing up at the time of the collision and thus not at fault;[44] (5) Plaintiff's drug test of March 29, 2015 was negative for prohibited substances;[45] and (6) she advised Huckins that Plaintiff was not at fault for a preventable accident, to which he allegedly responded that he "didn't care."[46]

Plaintiff also claims that she has never seen or received the "new Rules"[47] under which RCX claims she was terminated. RCX claims Plaintiff was terminated under its company handbook Rule 7.11[48] for backing up on a highway at night (an unsafe maneuver) and Rule 7.4[49] for causing or contributing to a preventable accident involving substantial material damage.[50] Plaintiff claims she was questioned in her deposition from

---

[39] Rec. Doc. No. 38 at 10.
[40] Plaintiff cites to Rec. Doc. No. 38-9; however, nothing in this document supports this contention. In fact, Rec. Doc. No. 38-9 at 7, entitled "3.7 Progressive Disciplinary," provides in bold: "**The employment relationship is at will and may be terminated by the employee or the Company at any time for any reason, with or without notice.**"
[41] Rec. Doc. No. 38-3, ¶ 18 (*Declaration* of Monica Bourgeois).
[42] *Id.* at ¶ 19.
[43] *Id.*
[44] *Id.* at ¶ 20.
[45] *Id.* at ¶ 21.
[46] *Id.* at ¶ 22.
[47] Rec. Doc. No. 38 at 6.
[48] Rec. Doc. No. 26-1.
[49] Rec. Doc. No. 25-5.
[50] Rec. Doc. No. 24-1 at 4.
Document Number: 48169

RCX's Driver Orientation Handbook which does not contain these provisions.[51]  Notably, RCX also claims Plaintiff was subject to termination as her conduct was a violation of state law – Louisiana Revised Statutes 32:281(B) provides that "[t]he driver of a vehicle shall not back the same upon any shoulder or roadway of any controlled-access highway except as a result of an emergency caused by an accident or breakdown of a motor vehicle."

Following her termination, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC")[52] and, upon receiving a Right to Sue Letter, filed this lawsuit alleging claims under Title VII of the Civil Rights Act of 1964,[53] specifically that the Defendants' failure to promote her and her termination were motivated by race and gender discrimination.  Plaintiff also contends she was subjected to a hostile work environment based on race and gender.   Plaintiff also seeks redress under 42 U.S.C. § 1981 and the Louisiana Employment Discrimination Law ("LEDL").[54] Defendants now move for summary judgment on all of Plaintiff's claims.

## II.    LAW & ANALYSIS

### A.  Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[55]  "When assessing whether a dispute to any material fact exists, we consider all

---

[51] *See* Rec. Doc. No. 38-2 at 8-42.
[52] Rec. Doc. No. 1-4.
[53] 42 U.S.C. § 2000e *et seq.*
[54] La. R.S. 23:301 *et seq.*  Claims of discrimination brought under § 1981 and the LEDL are analyzed under the same evidentiary framework applicable to claims of employment discrimination brought under Title VII; thus, the analysis and reasoning for Plaintiff's Title VII claims will apply with equal force to her Section 1981 and LEDL claims. *LaPierre v. Benson Nissan, Inc.,* 86 F.3d 444, 448 n. 2 (5th Cir.1996).
[55] Fed. R. Civ. P. 56(a).
Document Number: 48169

of the evidence in the record but refrain from making credibility determinations or weighing the evidence."[56]  A party moving for summary judgment "must 'demonstrate the absence of a genuine issue of material fact,' but need not negate the elements of the nonmovant's case."[57]  If the moving party satisfies its burden, "the non-moving party must show that summary judgment is inappropriate by setting 'forth specific facts showing the existence of a genuine issue concerning every essential component of its case.'"[58]  However, the non-moving party's burden "is not satisfied with some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence."[59]

Notably, "[a] genuine issue of material fact exists, 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"[60]  All reasonable factual inferences are drawn in favor of the nonmoving party.[61]  However, "[t]he Court has no duty to search the record for material fact issues. Rather, the party opposing the summary judgment is required to identify specific evidence in the record and to articulate precisely how this evidence supports his claim."[62]  "Conclusory allegations unsupported by specific facts … will not prevent the award of summary judgment; 'the plaintiff [can]not rest on his allegations … to get to a jury without any "significant probative evidence tending to

---

[56] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398-99 (5th Cir. 2008).
[57] *Guerin v. Pointe Coupee Parish Nursing Home*, 246 F.Supp.2d 488, 494 (M.D. La. 2003)(quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)(en banc)(quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25, 106 S.Ct. at 2552)).
[58] *Rivera v. Houston Independent School Dist.,* 349 F.3d 244, 247 (5th Cir. 2003)(quoting *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998)).
[59] *Willis v. Roche Biomedical Laboratories, Inc.,* 61 F.3d 313, 315 (5th Cir. 1995)(quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).
[60] *Pylant v. Hartford Life and Accident Insurance Company*, 497 F.3d 536, 538 (5th Cir. 2007)(quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).
[61] *Galindo v. Precision American Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985).
[62] *RSR Corp. v. International Ins. Co.*, 612 F.3d 851, 857 (5th Cir. 2010).
Document Number: 48169

support the complaint."""[63]

## B. Title VII Failure to Promote

Plaintiff alleges that Defendants discriminated against her on the basis of race and gender in failing to promote her to a Lead Driver position. In order to survive Defendants' motion for summary judgment on her failure to promote claims, Plaintiff must establish a *prima facie* case of discrimination by providing summary judgment evidence that (1) she is a member of a protected class, (2) that she sought and was qualified for an open position, (3) that she was rejected for the position, and (4) that the employer hired a person outside of her class.[64] If Plaintiff meets her *prima facie* burden, the Defendants must "produce a legitimate, nondiscriminatory reason for the failure or refusal to [promote] the plaintiff."[65] If the Defendants proffer a legitimate, nondiscriminatory reason for the failure or refusal to promote Plaintiff, Plaintiff then "bears the ultimate burden of proving that the defendant's proffered legitimate nondiscriminatory reason is pretext for discrimination. To carry this burden, the plaintiff must rebut each nondiscriminatory reason articulated by the defendant."[66]

It is undisputed that Plaintiff is an African-American female and, thus, in a protected class. It is also undisputed that she was not promoted to Lead Driver. The Court finds, however, that Plaintiff has failed to carry her burden of establishing prongs two and four. Plaintiff must demonstrate through competent summary judgment evidence that she

---

[63] *Nat'l Ass'n of Gov't Employees v. City Pub. Serv. Bd. of San Antonio, Tex.*, 40 F.3d 698, 713 (5th Cir. 1994)(quoting *Anderson*, 477 U.S. at 249).
[64] *Lewis v. City of Shreveport*, 2018 WL 752362 at *4 (W.D. La. Feb. 7, 2018)(citing *McMullin v. Miss. Dep't of Pub. Safety*, 782 F.3d 251, 258 (5th Cir. 2015) (citing *Williams-Boldware v. Denton Cty.*, 741 F.3d 635, 643 (5th Cir. 2014))).
[65] *Sharkey v. Dixie Elec. Membership Corp.*, 262 Fed. Appx. 598, 602 (5th Cir. 2008).
[66] *Id.*

Document Number: 48169

sought and was qualified for an open position. It is disputed whether there was in fact an open position for Lead Driver on the date Plaintiff requested the promotion, and there is no summary judgment evidence establishing that Plaintiff was qualified for a Lead Driver position. Further, there is no summary judgment evidence that Casey Portier is a white female or that he/she filled this position.

Plaintiff declared under oath that she approached Huckins in the presence of Bourgeois on March 28, 2015 and asked to be promoted to Lead Driver.[67] Plaintiff further declared that "Monica Bourgeois had previously informed me that a lead driver position was open or available."[68] In Bourgeois' *Declaration*, she states that she was the branch manager of Plaintiff's location on March 28, 2015 and that, "[o]n or about March 28, 2015, the lead driver position was open and there were two people who had applied for the position: Sonia Clark and Casey Portier."[69] However, RCX Vice President Beck attested that, in the weeks leading up to and at the time of Plaintiff's accident, there were no Lead Driver positions available in the Baton Rouge/Port Allen location.[70] Sandy Walker, Vice President of Human Resources for RCX, also attested that, "[o]n March 27-28, 2015, there was no available position for Lead Driver in the Baton Rouge/Port Allen location, nor was one expected to become available."[71] At first blush, it would seem that whether thre was or was not a lead driver position open is a fact in dispute; however, Plaintiff offers no evidence demonstrating the posting of this position, the date the position became available, her formal application therefor, the date it was filled, and by whom. Considering

---

[67] Rec. Doc. No. 38-2, ¶ 5 (Plaintiff's *Declaration*).
[68] *Id.* at ¶ 6.
[69] Rec. Doc. No. 38-3, ¶¶ 2, 8 (*Declaration* of Monica Bourgeois).
[70] Rec. Doc. No. 25-4, ¶ 5 (Affidavit of Andrew Beck, Vice President of Operations Support for RCX).
[71] Rec. Doc. No. 26-5, ¶ 3a (*Affidavit* of Sandy Walker, Vice President of Human Resources for RCX).
Document Number: 48169

the employment records that have been submitted as evidence in this case, Plaintiff's failure to submit competent summary judgment evidence regarding this alleged open position undermines her claim.

Plaintiff has also failed to demonstrate that she was qualified for the position of Lead Driver. First, no evidence has been produced that provides a job description for the Lead Driver position or sets forth the job requirements and qualifications for this position. It is particularly difficult to determine whether Plaintiff is qualified for a position where there is no record evidence of the position's job description and requirements/qualifications. Bourgeois declared that "[t]he lead driver position required the employee to assist me, as the branch manager,"[72] and that "Lead Drivers and Drivers are subject to the same employment policies and are similarly situated with regard to their driving responsibilities."[73] Bourgeois' *Declaration* does not contain information that describes the Lead Driver position, duties, responsibilities, and qualifications. Further, Bourgeois' statement that Lead Drivers are "similarly situated" to drivers is a legal conclusion for which there is no evidence to indicate Bourgeois is qualified to make. Also, it is disingenuous to claim that a Lead Driver is essentially the same position as Driver; obviously, Lead Driver comes with a different title and better pay; as such, there must be some distinction between the two positions. Notably, Plaintiff's application for the Driver position lists in detail the professional and personal expectations required to fill the Driver position.[74] No such application or job description is in evidence for the Lead Driver position.

---

[72] Rec. Doc. No. 38-3, ¶ 6 (*Declaration* of Monica Bourgeois).
[73] *Id.* at ¶ 36.
[74] Rec. Doc. No. 25-1 at 5.
Document Number: 48169

Secondly, Plaintiff has failed to establish through competent summary judgment evidence that she was, in fact, qualified for the undescribed Lead Driver position. The only mention of Plaintiff's qualification for this position is found in Bourgeois' *Declaration*, wherein she declares that she reviewed the applicants for lead driver position and would make a recommendation as to who she wanted to be promoted for approval by Huckins.[75] Bourgeois states: "I **<u>felt</u>** Sonia Clark was qualified for the lead driver position and would have preferred her to receive the promotion to lead driver."[76] This statement does not demonstrate Plaintiff's qualifications for the Lead Driver position and is a subjective, conclusory statement devoid of factual support. Bourgeois offers no facts to support her "feeling" and likewise provides no facts that would distinguish Plaintiff's qualifications from those of the alleged promotion recipient.

Finally, Plaintiff argues that, after Huckins refused to consider her for the Lead Driver position based on her race, "the Caucasian applicant received the promotion."[77] In support of this argument, Plaintiff cites to Bourgeois' *Declaration*. Although Bourgeois declares that Casey Portier applied for the Lead Driver position[78] and ultimately received the position after Plaintiff's termination,[79] nothing in Bourgeois' *Declaration* identifies Casey Portier as a Caucasian female. Arguments by counsel in a brief do not constitute summary judgment evidence, and there is no summary judgment record evidence offered by Plaintiff establishing that Casey Portier is a Caucasian female who received this promotion on a date after Plaintiff's termination. Bourgeois' *Declaration* is general, vague,

---

[75] Rec.Doc. No. 38-3, ¶ 7.
[76] *Id.* at ¶ 9.
[77] Rec. Doc. No. 38 at 9.
[78] Rec. Doc. No. 38-3, ¶ 8 (*Declaration* of Monica Bourgeois).
[79] *Id.* at ¶ 12.
Document Number: 48169

and unsubstantiated by company documents, and it does not create material issues of fact.

Accordingly, Plaintiff has failed to carry her burden of demonstrating a *prima facie* case of failure to promote based on race or gender. Because Plaintiff has failed to satisfy this burden, no burden shifts to Defendants under *McDonnell Douglas*.[80] Because Plaintiff has failed to present competent summary judgment evidence to demonstrate material facts in dispute as to her *prima facie* case, Defendants are entitled to summary judgment on Plaintiff's failure to promote claim.

### C. Title VII Race/Gender Discrimination – Termination

Plaintiff also claims that her termination was based on her race and gender in violation of Title VII. To prove race and/or gender discrimination under Title VII, Plaintiff must establish that she is (1) "a member of a protected class" (2) "was qualified for the position" (3) "was subjected to an adverse employment action"; and (4) "other similarly situated persons were treated more favorably."[81] If Plaintiff establishes a *prima facie* case of discrimination, the burden shifts to the Defendants to articulate legitimate, non-discriminatory reasons for the adverse actions taken against her.[82] If the Defendants

---

[80] The Court notes that there is pretext evidence on the failure to promote claim considering the alleged statement by Huckins in response to Plaintiff's inquiry regarding a promotion to Lead Driver. However, unlike many other circuits, in applying *United States Postal Serv. Brd. Of Governors v. Aikens*, 460 U.S. 711 (1983), the Fifth Circuit has made it abundantly clear that, "under *McDonnell Douglas*, at the summary judgment stage the burden of producing a legitimate, nondiscriminatory reason only shifts to the employer *after* the plaintiff has established a prima facie case. There is no authority in this Circuit that would allow the employee's burden of establishing a prima facie case to be extinguished simply because an employer exercises its right to challenge the prima facie case and also proffers a legitimate, nondiscriminatory reason for its decision." *Hague v. Univ of Texas Health Science Ctr. at San Antonio*, 560 Fed. Appx. 328, 334-35 (5th Cir. 2014)(emphasis in original). Accordingly, because Plaintiff fails to present a *prima facie* case of failure to promote, the inquiry ends on this claim.
[81] *Septimus v. Univ. of Hous.*, 399 F.3d 601, 609 (5th Cir. 2005).
[82] *Lee v. Kansas City Southern Ry. Co.*, 574 F.3d 253, 259 (5th Cir. 2009)
Document Number: 48169

satisfy this burden of production, the burden shifts back to Plaintiff, who must "offer sufficient evidence to create a genuine issue of material fact "either (1) that the defendant's reason is not true, but is instead a pretext for discrimination (pretext alternative); or (2) that the defendant's reason, while true, is only one of the reasons for its conduct, and another motivating factor is the plaintiff's protected characteristic (mixed-motive[s] alternative)."[83]  Plaintiff proceeds under a pretext theory in this case.[84]

### 1. Similarly Situated Comparators

Turning to Plaintiff's *prima facie* case of race/gender discrimination, it is undisputed that Plaintiff satisfies the first three prongs.  However, Plaintiff has failed to satisfy prong four in that she has failed to identify a proper comparator—someone "similarly situated" who was "treated more favorably."[85]  The law is clear that, "[i]n the context of a race [or sex] discrimination claim where the plaintiff alleges that employees who were not members of the protected class received more [favorable treatment], the plaintiff must come forward with **specific evidence** of comparators who were similarly situated."[86] Courts within the Fifth Circuit define "similarly situated" narrowly.[87]  In evaluating whether an alleged comparator is similarly situated,

> "The employment actions being compared will be deemed to have been taken under nearly identical circumstances when the employees being compared held the same job or responsibilities, shared the same supervisor

---

[83] *Rachid v. Jack In The Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004); *see also Vaughn v. Woodforest Bank*, 665 F.3d 632, 637 (5th Cir. 2011) (citing same in the context of a Title VII race discrimination case).
[84] Rec. Doc. No. 38 at 13.
[85] *Septimus* , 399 F.3d at 609.
[86] *Corley v. Louisiana ex rel. Div. of Admin., Office of Risk Mgmt*, 816 F.Supp.2d 297, 316 (M.D. La. 2011)(citing *Lee v. Kansas City Southern Ry. Co.*, 574 F.3d 253, 259–60 (5th Cir. 2009))(emphasis added).
[87] *See Horton v. G4S Secure Solutions (USA), Inc.*, No. 16-544-SDD-EWD, 2018 WL 1997535 at *5 (M.D. La Apr. 27, 2018)(citing
*Brown v. Bd. of Trustees Sealy Indep. Sch. Dist.*, 871 F.Supp.2d 581, 593 (S.D. Tex. 2012); *see also Lopez v. Kempthorne,* 684 F. Supp. 2d 827, 856-57 (S.D. Tex. 2010)).
Document Number: 48169

[,] or had their employment status determined by the same person[.]"[88] "Employees with different supervisors, who work for different divisions of a company ... generally will not be deemed similarly situated." The Fifth Circuit has further explained, that "employees who have different work responsibilities ... are not similarly situated."[89]

Plaintiff identifies two Caucasian male RCX drivers, John Demoulin ("Demoulin") and Kevin Payne ("Payne"), as similarly situated comparators. However, Plaintiff fails to present competent summary judgment evidence that either is a similarly situated comparator, and RCX submits competent summary judgment evidence demonstrating that they are not similarly situated to Plaintiff.

RCX has submitted evidence showing that Demoulin was a Lead Driver in the Baton Rouge/Port Allen location who did not hold the same job or job title as Plaintiff.[90] Further, Human Resources Vice President Walker attested that Demoulin was never involved in any accident – preventable or non-preventable – while employed by RCX.[91]

Relying again on the Bourgeois *Declaration*, Plaintiff claims that, as a Lead Driver, Demoulin is a proper comparator because Bourgeois stated that "Lead Drivers and Drivers are subject to the same employment policies and are similarly situated with regard to their driving responsibilities."[92] As set forth above, Bourgeois' statement that Lead Drivers are "similarly situated" to drivers is a legal conclusion for which there is no evidence to indicate Bourgeois is qualified to make. Further, the Fifth Circuit has made clear that employees with different job titles and different positions are not similarly

---

[88] *Id.* (quoting *Turner v. Kansas City S. Ry. Co.*, 675 F.3d 887, 893 (5th Cir. 2012)(quoting *Lee v. Kan. City S. Ry. Co.*, 574 F.3d 253, 260 (5th Cir. 2009))).

[89] *Id.* (quoting *Lee*, 574 F.3d at 259 (citing *Wyvill v. United Cos. Life Ins.*, 212 F.3d 296, 302 (5th Cir. 2000)).

[90] *See* Rec. Doc. No. 26-5, ¶ 3b. (*Affidavit* of Sandy Walker).

[91] *Id.*

[92] Rec. Doc. No. 38-3, ¶ 36 (*Declaration* of Monica Bourgeois).

Document Number: 48169

situated. Thus, the Court finds that Demoulin is not Plaintiff's comparator by job title alone.

Plaintiff also claims that RCX's statement that Demoulin did not have an accident driving for RCX is "untrue."[93] Plaintiff cites to Bourgeois' *Declaration* wherein she declared: "I am aware of other accidents where employees of Railcrew Xpress were involved in 'at fault' accidents and were not terminated. Those drivers were John Demoulin and Kevin Payne. Mr. John Demoulin's accident was never reported to the police."[94] Plaintiff argues in her *Opposition* that "[n]o accident report was generated as this was a single card accident and Linwood Huckins decided there was not sufficient damage to discipline [Demoulin]."[95] Yet, this statement does not appear in the Bourgeois *Declaration.*

The Court finds, under Fifth Circuit precedent,[96] that Bourgeois' statement is not competent summary judgment evidence. First, Bourgeois declares that she has personal knowledge of the facts contained in her *Declaration,*[97] yet she provides no factual support for this personal knowledge in contrast to Walker's attestation that she has personal knowledge of Demoulin's employment records in her role as Vice President of Human Resources and her access to the employment records of both Demoulin and Payne. Walker's access is demonstrated by the attachment of the relevant employment records as exhibits to her *Affidavit.* No such statement of facts to support her alleged personal knowledge and no accompanying documentation are referenced in Bourgeois'

---

[93] Rec. Doc. No. 38 at 13.
[94] Rec. Doc. No. 38-3, ¶ 29 (*Declaration* of Monica Bourgeois).
[95] Rec. Doc. No. 38 at 13.
[96] *See* note 97, *infra.*
[97] Rec. Doc. No. 38-3, ¶ 3.
Document Number: 48169

*Declaration*.  Furthermore, Bourgeois declares that, while an employee of RCX, Demoulin had an "at fault" accident; however, Bourgeois does not state that this alleged accident happened while driving a RCX vehicle, caused property and/or personal injuries, or included driving practices that violated company policy or Louisiana law.  Finally, Bourgeois' statement "I am aware" does not establish that she is aware through personal knowledge rather than hearsay.[98]  Personal knowledge means that the affiant "must have had an opportunity to observe, and must have actually observed the fact."[99]  Nothing in Bourgeois' *Declaration* demonstrates her personal knowledge of these "facts."

The Court also finds that Payne is not a similarly situated comparator.  Although Plaintiff argues Payne was "employed in her area,"[100] the record evidence demonstrates that Payne was employed by RCX in West Quincy, Missouri.[101]  Plaintiff offers no evidence to dispute this fact.  This alone excludes Payne as Plaintiff's comparator under Fifth Circuit law:  "Employees with different supervisors, who work for different divisions of a company ... generally will not be deemed similarly situated."[102]  There is no evidence before the Court that Payne and Plaintiff shared a supervisor, and they clearly did not

---

[98] *See Floyd v. Chilly's L.L.C. of Alabama*, No. 15-00544-BAJ-RLB, 2017 WL 1455024 at *3 (M.D. La. Apr. 21, 2017)("[I]t is not enough to merely stated that the affidavit is based on personal knowledge, it must be clear that it is also based on facts alleged in the affidavit. *See Bright v. Ashcraft*, 259 F. Supp. 2d 494, 498 (E.D. La. 2003)("A declarant must provide evidence to establish that he has personal knowledge of the facts stated."). **Personal knowledge means that the affiant "must have had an opportunity to observe, and must have actually observed the fact."** *Ripple v. Marble Falls Indep. Sch. Dist.*, 99 F. Supp. 3d 662, 673 (W.D. Tex. 2015)(emphasis added). Finally, "[u]nsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence." *Walker v. SBC Servs., Inc.,* 375 F. Supp. 2d 524, 535 (N.D. Tex. 2005). Any statements that violate the rule[s] may "not [be] considered for summary judgment purposes; any portions of the declarations that are not struck remain part of the summary judgment record." *Ripple v. Marble Falls Indep. Sch. Dist.*, 99 F. Supp. 3d 662, 673 (W.D. Tex. 2015)).

[99] *Ripple*, 99 F. Supp. 3d at  673.

[100] Rec. Doc. No. 38 at 14.

[101] Rec. Doc. No. 26-5, ¶ 3c. (*Affidavit* of Sandy Walker); Exhibit A to *Affidavit*, pp. 7-10.

[102] *See* fn. 88 *supra*.

Document Number: 48169

work in the same divisions as demonstrated by simple geography. Plaintiff's reliance on Bourgeois' *Declaration* regarding Payne is without merit for the same reasons set forth above and based on the evidence submitted by RCX establishing that Payne's accident was not under "nearly identical circumstances" as Plaintiff's.[103]

Accordingly, because Plaintiff has failed to point to a proper, similarly situated comparator,[104] she has failed to establish a *prima facie* case of race discrimination. Although the Court need not go further, the Court also finds that, even if Plaintiff could establish a *prima facie* case of race/gender discrimination, she has failed to overcome Defendants' legitimate, nondiscriminatory reason for her termination with pretext evidence suggestive of race or gender discrimination.

### 2. Legitimate, Non-discriminatory Reason for Termination

RCX has presented a legitimate, non-discriminatory reason for terminating Plaintiff. RCX submitted evidence demonstrating that, on March 30, 2015, members of RCX's corporate management team O'Hara, Taylor, and Beck viewed the footage from Plaintiff's DriveCam recordings the previous night.[105] Both O'Hara and Beck attested that, upon viewing Plaintiff backing up on a 55 mph highway at night, they deemed her conduct sufficiently egregious and dangerous to warrant immediate termination.[106] Plaintiff's Termination Report, dated as submitted April 1, 2015, states that Plaintiff was

---

[103] *Id.* at ¶ 3d.

[104] Defendants offered evidence of a male Caucasian driver and a female Caucasian driver who were both terminated for violations similar to Plaintiff's in driving accidents. Rec. Doc. No. 26-5, ¶ 3f. Plaintiff claims these drivers are not comparators because they were at fault in their accidents and were not rear-ended. Plaintiff argues that Defendants produced no evidence of similar employees terminated after being rear-ended; however, Defendants are correct that it is not their burden at all to produce evidence of similarly situated comparators.

[105] Rec. Doc. No. 24-4, ¶¶ 11-12.

[106] *See* Rec. Doc. No. 24-4 and Rec. Doc. No. 25-4.

Document Number: 48169

terminated on March 29, 2015 with a Discharge notation of "M23 Preventable Accident" and Remarks that "Sonia Clark backed the van up on a highway and had an accident."[107] RCX maintains Plaintiff's conduct violated RCX backing policy Rule 7.11 and Rule 7.4 set forth in the RCX Employee Policy Manual and, importantly, Louisiana law.

Rule 7.11 Backing Policy provides, in pertinent part, as follows:

Drivers should make every effort to avoid operating a vehicle in such a manner that would require a backing maneuver. Backing a vehicle is not encouraged and contrary to our goal of *providing safe, dependable transportation services, and to perform those services efficiently.* Backing should be **isolated exceptions** to the operation of the vehicle, and backing should only occur when there is no other **reasonable alternative**.

***

This backing policy has been implemented to ensure the safety of you, your crew, and RCX equipment. Failure to comply with this policy will result in disciplinary action, up to and including termination of employment.[108]

It is undisputed that Plaintiff backed up on Highway 190 at night while driving her RCX van.[109] Further, the Court has viewed the video footage of Plaintiff's accident,[110] and the Court finds that Plaintiff was backing up on the highway at night.[111]

Rule 7.4 Accident Policy provides, in pertinent part, as follows:

A preventable accident is one in which the driver failed to do everything reasonably possible to avoid the accident. The fact that a driver, who becomes involved in a vehicle collision, is not legally charged does not mean that the driver could not have avoided the accident.

All accidents are preventable if a driver is involved in:

***

A violation of RCX Critical Safety rules, RCX policies or local, state or federal laws or regulations.[112]

---

[107] Rec. Doc. No. 38-13.
[108] Rec. Doc. No. 26-1 at 2. (emphasis in original).
[109] Rec. Doc. No. 38-2 at ¶ 25.
[110] Rec. Doc. No. 31.
[111] The Court makes no determination whether Plaintiff was backing up at the time of the collision or whether Plaintiff "caused" the accident.
[112] Rec. Doc. No. 25-5 at 2.
Document Number: 48169

Rule 7.4 goes on to explain the disciplinary process for a non-preventable accident and a preventable accident. Under "Preventable Accident," the policy provides that "a driver will be terminated if any of the following circumstances exist," and includes "The accident is of a level of severity which brings about substantial material loss or loss of human life."[113] The policy also provides an employee's right to an appeal process which requires the driver to appeal, in writing, with the Location and/or Regional Manager, within 30 days from the date of the incident.[114]

Rule 7.4 expressly provides that an accident may be classified as preventable if the driver has committed a "violation of RCX Critical Safety rules, RCX policies or local, state or federal laws or regulations." Plaintiff clearly violated the Rule 7.11 Backing policy, and RCX also claims Plaintiff violated Louisiana Revised Statutes 32:281(B), which provides that "[t]he driver of a vehicle shall not back the same upon any shoulder or roadway of any controlled-access highway except as a result of an emergency caused by an accident or breakdown of a motor vehicle." Plaintiff has not disputed that her conduct violated the law. Accordingly, the record reflects that RCX's decision to terminate Plaintiff based on these violations comports with its Employee Policy Manual and constitutes a legitimate, non-discriminatory reason for Plaintiff's termination.

3. Pretext

Plaintiff presents several arguments challenging the veracity or the legitimacy of RCX's proffered reason for her termination and claims this reason is a pretext for race and gender discrimination. Nevertheless, even if Plaintiff could demonstrate a *prima facie*

_____

[113] *Id.* at 3.
[114] *Id.*
Document Number: 48169

case, and then show that Defendants' legitimate, non-discriminatory business reason was pretext or at least a motivating factor in her "termination," Defendants may still prevail by establishing that the same action would have occurred regardless of her race or gender.[115] The Court will briefly address Plaintiff's pretext arguments.

<u>Date of Termination/Huckins' Decision</u>

Much is made of whether Plaintiff was terminated on March 29, March 30, or April 1 of 2015, and whether Plaintiff was terminated by Huckins immediately following the accident, or at the direction of the RCX Management Team after they viewed the accident footage. Neither issue is material to whether Plaintiff was terminated due to her race/gender.

Plaintiff claims Defendants' alleged termination date is incorrect. However, Plaintiff herself has offered differing dates for her termination. Plaintiff alleged in her *Complaint* that she was terminated on March 29, 2015,[116] and stated in her EEOC Charge that she was terminated on March 29, 2015.[117] In her *Declaration*, Plaintiff stated under penalty of perjury that Huckins called her on the morning of March 30, 2015 and terminated her in that call.[118] RCX states Plaintiff was terminated on April 1, 2015 when Huckins was directed to process her paperwork,[119] and that is the submission date on Plaintiff's Termination Report.[120] Yet, the Termination Report clearly sets forth the termination date retroactive to the date of the accident – March 29, 2015. That the parties disagree on the

---

[115] *See e.g., LaCaze v. W.W. Grainger Inc.*, 2005 WL 1629936 at *6 (W.D. La. 2005)(citing *Rachid*, 376 F.3d at 312) *see also, Machinchick v. PB Power, Inc.,* 398 F.3d 345 (5th Cir. 2005).
[116] Rec. Doc. No. 1, ¶ 21.
[117] Rec. Doc. No. 26-3.
[118] Rec. Doc. No. 38-2, ¶¶ 19-20.
[119] Rec. Doc. No. 25-4, ¶ 15, Exhibit B.
[120] Rec. Doc. No. 38-13.
Document Number: 48169

actual date of termination is irrelevant to the issue in this case.

Plaintiff contends Huckins terminated Plaintiff without reviewing the video footage, without direction from RCX management, and despite Bourgeois' recommendation to Huckins that Plaintiff was not at fault for the accident based on her viewing of the footage and as set forth in Lt. Biddy's police report. RCX Management team members Beck and O'Hara both attested that they had never heard of or seen Plaintiff before viewing this footage.[121] Both also attested that, immediately upon viewing the footage, they determined that Plaintiff should be terminated for the egregious and dangerous driving exhibited on the night of the accident. Plaintiff has offered no evidence to dispute that Beck and O'Hara reached this conclusion without respect to, or knowledge of, Plaintiff's race or gender. It is also uncontroverted that neither Beck nor O'Hara knew anything about the alleged discriminatory conduct by Huckins until after Plaintiff filed this lawsuit. Thus, there is no evidence that Plaintiff's race or gender, or her alleged issues with Huckins, played any role in the management team's decision to terminate her.

Plaintiff insists that Huckins had the authority to fire her and that he did so without regard to management or viewing footage from the accident. However, as demonstrated above, Plaintiff herself has offered two different dates of her termination. Moreover, the email communications among the management team just days after the accident suggest that Huckins waited for instructions from management and did not inform management's decision to terminate Plaintiff. Beck asked Huckins on April 1 if Plaintiff had been terminated yet. When Huckins responds that he has not taken action because was

---

[121] Rec. Doc. No. 24-4, ¶10; Rec. Doc. No. 25-4, ¶ 6.
Document Number: 48169

waiting on Bryan (O'Hara), Beck instructs him to go ahead and submit Plaintiff's termination. Twice in this communication, Huckins states that he was waiting on Bryan and "thought [he] had to wait for Bryan," which demonstrates that Huckins did not believe he had the authority to terminate Plaintiff on his own. Nevertheless, even accepting Plaintiff's version of the events as true, if the management team merely later ratified Huckins' decision (that they did not know he made), Plaintiff has failed to point to any summary judgment evidence that would show that the management team would not have reached the same decision regardless of Huckins.

<u>Bourgeois' Investigation and Recommendation</u>

Plaintiff also offers as pretext evidence the fact that Huckins and/or the management team "blatantly disregard[ed]" the findings of Bourgeois. Bourgeois stated that she was "tasked with investigating Ms. Clark's accident and determining whether she caused the accident and/or violated any safety policy."[122] After viewing the accident footage and consulting with Lt. Biddy, Bourgeois "concluded that Ms. Clark was not backing up at the time of the accident and was not the cause of the accident."[123] However, the Court finds that RCX management did not have to accept Bourgeois' recommendation or findings. According to the summary judgment evidence, it was not Bourgeois' job responsibility to reach a final conclusion as to discipline. Rule 7.4 of the Employee Policy Manual states:

> Regional Managers, Area Managers and Location Managers have the responsibility to ensure that an accident is properly reported, investigated and the determined counseling/discipline is administered. The Safety Oversight Committee bears the responsibility of determining the preventability of an accident when extenuating circumstances fall outside

---

[122] Rec. Doc. No. 38-3, ¶ 18 (*Declaration* of Monica Bourgeois).
[123] *Id.* at ¶ 20.
Document Number: 48169

the standard parameters of preventability determination.[124]

It is clear from the Policy language that Bourgeois, as Branch Manager, did not have the authority to make such conclusions and findings of her own accord, and further, it is clear from the record in this case that the Safety Oversight Committee deemed this accident one for which it would determine preventability and discipline.

### Lt. Biddy's Police Report

Plaintiff also claims that Huckins and/or RCX ignored Lt. Biddy's Police Report finding Plaintiff not at fault and citing the other driver for the accident. Under the Policy, Lt. Biddy's findings are irrelevant to RCX's determination of preventability. Rule 7.4 states: "The fact that a driver, who becomes involved in a vehicle collision, **is not legally charged does not mean that the driver could not have avoided the accident**."[125] It further states that "[a]ll accidents are preventable if the driver is involved in … [a] violation of RCX Critical Safety rules, RCX policies or local, state or federal laws or regulations."[126] As demonstrated above, Plaintiff's conduct before the accident violated both RCX policy and Louisiana law, and RCX was not bound by the determination of Lt. Biddy that Plaintiff was not at fault for the accident.

### Technical Problems with Video Footage

Plaintiff also claims that the video footage submitted to the Court is much shorter than the footage viewed by Bourgeois on the night of the accident and does not capture the entirety of the seconds leading up to the accident. Plaintiff cited to email communications demonstrating technical problems with the video footage, and she claims

---

[124] Rec. Doc. No. 25-5.
[125] Rec. Doc. No. 25-5 at 2 (emphasis added).
[126] *Id.*

Document Number: 48169

that it has been pieced together to appear that she was backing up when she was rear-ended when she was actually stopped and the vehicle was in Drive.

Accepting Plaintiff's claims as true regarding the video, this fact is immaterial to the issue before the Court. Indeed, the Court could not ascertain whether Plaintiff was still backing up or if she was stopped at the time of impact; however, it does not change the fact that she is clearly backing up on a state highway at night which violates RCX policy and Louisiana law. Plaintiff continually mischaracterizes RCX's proffered reason for her termination – she was not terminated for being "at fault" in the accident. Rather, pursuant to the definitions set forth in the Policy, she was terminated based on the finding that the accident was preventable due to her violations of company policy and Louisiana law.

<u>Plaintiff Was Not Provided Rules 7.11 or 7.4</u>

Plaintiff's argument that she was not provided with the Employee Policy Manual or Rules 7.11 or 7.4 is meritless. Plaintiff declared that she "did receive a Railcrew Express handbook when [she] was hired," and Plaintiff attached as an exhibit portions of that handbook, entitled Professional Driver Orientation Notebook.[127] Plaintiff further states: "during my deposition questions to me by opposing counsel were based upon the handbook I received,"[128] and "I understand that certain sections of another handbook were used by Railcrew Xpress Corporate to attempt to ratify my termination by Mr. Huckins."[129] Plaintiff also states that her handbook does not contain Sections 7.4 and

---

[127] Rec. Doc. No. 38-2 at ¶ 30 (Plaintiff's *Declaration*); pp. 8-42.
[128] *Id.* at ¶ 31.
[129] *Id.* at ¶ 32.
Document Number: 48169

7.11.[130]  Plaintiff's claim that she was never provided and did not have access to the Employee Policy Manual containing these provisions is undermined by her own evidence. The very handbook offered by Plaintiff as an exhibit expressly states the following on page 29:  "The RailCrew Xpress Employee Handbook can be found **in its entirety** on our website [www.railcrewxpress.com](www.railcrewxpress.com).   It is **your responsibility to read and apply all policies contained in it**.  It is important to periodically review it for updates."[131]   This language comes directly from the handbook Plaintiff admits she was given.  Notably, this is also the document that sets forth the appeal process of which Plaintiff claims she was not apprised.

Backing Up Not Prohibited

Although the video footage clearly shows Plaintiff backing up, Plaintiff seemingly refused in her deposition to acknowledge that she had backed up on the highway.  When asked if she backed up, she responded:  "I wouldn't call it a backup, per se."[132]   After further questioning, she testified:  "I don't consider it a backup."[133]  She admitted that she put her car in reverse but stated that she "didn't hit the accelerator.  [She] just coasted back."[134]   When pressed with the inquiry how she could move backwards without using the accelerator, she responded: "Well, after I put it in Reverse and gave it a little tap, that was that."[135]  A few weeks after her deposition, Plaintiff executed a *Declaration* wherein she finally admitted that she did "back up prior to the accident[.]"[136]

---

[130] *Id.* at ¶ 33.
[131] Rec. Doc. No. 38-2 at 36 (emphasis added).
[132] Rec. Doc. No. 25-2 at 4 (Deposition of Sonia Clark, p. 73, lines 6-7).
[133] *Id.* (Deposition of Sonia Clark, p. 73, line 25).
[134] *Id.* at 5 (Deposition of Sonia Clark, p. 74, lines7-8).
[135] *Id.* (Deposition of Sonia Clark, p. 73, lines 14-15).
[136] Rec. Doc. No. 38-2, ¶ 25 (Plaintiff's *Declaration*).  While the Court recognizes that it cannot make credibility determinations at the summary judgment stage, and it does not do so here, Plaintiff undermines
Document Number: 48169

Bound by this admission, Plaintiff now shockingly argues that "neither Rule 6 of Ms. Clark's Notebook nor Rule 7.11 prohibit backing up on a highway and/or at night."[137] Notwithstanding the undisputed fact that Louisiana law prohibits backing up on a highway at any time, Rule 6 of the Notebook states: "backing is **prohibited except under the most exceptional circumstances**;" "Drivers should **make every effort to avoid** operating a vehicle in such a manner that would require a backing maneuver;" and "Backing a vehicle is not encouraged."[138] Plaintiff has not argued nor has she offered any evidence that missing her turn and backing up constitutes "the most exceptional circumstances" for which this prohibition would not apply. Further, Rule 7.11 uses generally the same language as found in the Notebook but also states: "Backing should be **isolated exceptions** to the operation of the vehicle, and backing should only occur when there is no other **reasonable alternative**."[139] Again, Plaintiff failed to explain how her backup qualified as an isolated exception based on no other reasonable alternative."

<u>Subrogation</u>

Finally, Plaintiff argues that, "if Railcrew Xpress was so certain that Sonia Clark was the cause of the accident, it begs the question:  why did Railcrew Xpress seek to subrogate its rights against the other driver for the damage caused to its vehicle?"[140] As stated above, RCX did not terminate Plaintiff for being the cause of the accident; rather, it terminated Plaintiff for violating company policy and Louisiana law.  Indeed, Rule 7.4 contemplates that drivers may be deemed to have been involved in preventable accidents

---

her own credibility with the conflicting statements in her deposition and *Declaration*.
[137] Rec. Doc. No. 38 at 12.
[138] Rec. Doc. No. 38-2 at 28 (emphasis added).
[139] Rec. Doc. No. 26-1 (emphasis in original).
[140] Rec. Doc. No. 38 at 12.
Document Number: 48169

where even a small portion of negligence is on the part of the driver. That RCX sought subrogation against the other driver in no way invalidates its finding that Plaintiff's conduct violated the clear language of Rule 7.11.

As discussed above, Plaintiff articulates several disputed facts in this case; however, none of these facts are material to the determination of whether Plaintiff was discharged because of her race and gender rather than her violation of company driving policies and Louisiana traffic laws. The United States District Court for the Western District of Louisiana addressed a Title VII case with similar facts in *Mayes v. Office Depot, Inc.* and held:

> While Mayes has arguably presented evidence that Office Depot's explanation is pretextual, she has not presented sufficient evidence to support an inference that intentional discrimination was the real reason for Office Depot's employment decision. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 148, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000). In *Reeves*, the Supreme Court recognized that a prima facie showing, combined with evidence of pretext, may not always be enough to defeat judgment as a matter of law, stating that, "if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted evidence that no discrimination had occurred," the employer may be entitled to judgment in its favor. *Reeves*, 530 U.S. at 148, 120 S.Ct. 2097. In the case at bar, Mayes has established a prima facie case of discrimination, but has failed to carry the ultimate burden of showing that Office Depot's proffered reasons for not promoting her were false and that the real reason was discrimination. For the reasons stated above, the Plaintiff's claims for discrimination under Title VII, the ADEA, § 1981, and state are hereby dismissed with prejudice.[141]

The same reasoning and analysis applies to the case before the Court. While Plaintiff has not presented a *prima facie* case of discrimination, even assuming she had, Plaintiff has failed to demonstrate that RCX's legitimate reasons for her termination were

---

[141] 292 F.Supp.2d 878, 893-94 (W.D. La. 2003)
Document Number: 48169

a pretext for race and gender discrimination. The Court finds ample evidence in the record demonstrating that Plaintiff would have been terminated for company policy violations regardless of her race or gender. Furthermore, whether the Court views RCX's findings and decisions as to Plaintiff incorrect is not the question. The only question before the Court is whether the findings and decisions were motivated by Plaintiff's race or gender. The Fifth Circuit cautions that courts are not in the business of second guessing business judgments,[142] and the Court declines to do so here.

### D. Title VII Hostile Work Environment

Defendants also move for summary judgment on Plaintiff's hostile work environment claim on the grounds that this claim has not been exhausted as it was not asserted in the EEOC charge of discrimination. Plaintiff acknowledges that she did not reference harassment or hostile work environment in her EEOC charge; however, she argues that she may assert this claim as it was "reasonably expected to grow out of the charge of discrimination."[143] Plaintiff cites to general boilerplate law on this issue, but she fails to cite any jurisprudence that would support the argument that her hostile work environment claim reasonably grew out of her race discrimination claim. This is likely because the Fifth Circuit has repeatedly held to the contrary. In *Mitchell v. UTLX Mfg., L.L.C.*, where the plaintiff alleged only discrimination and retaliation in his EEOC charge, the Fifth Circuit held:

> Even if we were to consider the district court's finding that Mitchell had failed to exhaust the administrative remedies for his hostile work environment claim, we would affirm the district court. Upon reviewing both Mitchell's initial and amended EEOC complaints, it is clear that Mitchell raised only his race

---

[142] *Walton v. Bisco Indus. Inc.*, 119 F.3d 368, 372 (5th Cir.1997).
[143] Rec. Doc. No. 38 at 15, quoting *Pacheco v. Mineta*, 448 F.3d 783, 789 (5th Cir. 2006)(quoting *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 466 (5th Cir. 1970)).
Document Number: 48169

discrimination and retaliation claims before the EEOC. Thus the district court correctly dismissed his hostile work environment claim as unexhausted.[144]

Similarly, in *Turner v. Novartis Pharmaceuticals Corp.*, the Fifth Ciruit held:

> The district court correctly ruled that Turner did not exhaust his administrative remedies in relation to his hostile work environment claim. Since long before *McClain v. Lufkin Ind., Inc.*, 519 F.3d 264, 273 (5th Cir.2008), it has been clear that an employee must file his charge with the EEOC and exhaust administrative remedies by requesting an investigation of the facts he claims support a Title VII claim. Exhaustion must precede a lawsuit. Turner filed two EEOC charges, one alleging discrimination and one alleging retaliation. Neither of the two charges reasonably encompasses his new claim of a hostile work environment. *See Pacheco v. Mineta*, 448 F.3d 783, 788–89 (5th Cir.2006) (finding that the scope of an EEOC charge is both the charge itself and the investigation which can "reasonably be expected to grow out of the charge of discrimination" (citation omitted)). Because Turner did not exhaust his administrative remedies, summary judgment was proper on the hostile work environment claim.[145]

Thus, the Court finds that investigation into Plaintiff's race and gender-based discrimination charges would not reasonably lead the EEOC to investigate a hostile work environment claim.[146]  Defendants are entitled to summary judgment on this claim.

Moreover, Plaintiff's hostile work environment claim would also be dismissed on the merits.[147]  Plaintiff's arguments on this issue, particularly since she acknowledges that Huckins allegedly made only one racial epithet in her presence, and she was unaware of

---

[144] 569 Fed.Appx. 228, 231 (5th Cir. 2014).

[145] 442 Fed.Appx. 139, 141 (5th Cir. 2011).

[146] *See Kretchmer v. Eveden, Inc.*, 374 Fed.Appx. 493, 495 (5th Cir. 2010) (unpublished) (per curiam); *see also Thomas v. Tex. Dep't of Criminal Justice*, 220 F.3d 389, 395 (5th Cir. 2000).

[147] To establish a prima facie case of discrimination premised upon the theory of hostile work environment, a plaintiff must show the following: (1) she belongs to a protected group; (2) she was subjected to unwelcome harassment; (3) the harassment of which plaintiff complained was based on [race/gender]; and (4) the harassment affected a term, condition, or privilege of employment.  *Claiborne v. HUB Enterprises, Inc.*, 918 F.Supp.2d 579, 587 (W.D. La. 2013)(citations omitted). Because this claim involves alleged supervisor harassment that did culminate in a tangible employment action, the Court omitted the fifth element which encompasses the *Ellerth/Faragher* affirmative defense.  *See Johnson v. Fluor Corporation*, 181 F.Supp.3d 325, 337 (M.D. La. 2016).

Document Number: 48169

any other complaints by co-workers of alleged similar conduct until after her termination,[148] run contrary to settled Supreme Court and Fifth Circuit jurisprudence.

Under federal law, the mere utterance of ethnic or racial epithets that engender offensive feelings in an employee, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms, conditions, and privileges of employment.[149] Instead, a plaintiff must establish that the harassment complained of was sufficiently severe or pervasive to alter the conditions of her employment and create an abusive working environment.  Examples of more frequent utterances in other cases cited by the Eastern District of Louisiana in *Hardy v. Federal Express Corp.* were insufficient to establish a hostile work environment:

> [I]n *Vaughn v. Pool Offshore Co.*, 683 F.2d 922 (5th Cir. 1982), the Fifth Circuit did not find a hostile work environment where plaintiff was directly called racial epithets by coworkers. Similarly, in *Grant v. UOP, Inc.*, 972 F. Supp. 1042 (W.D. La. 1996), *aff'd*, 122 F.3d 1066 (5th Cir. 1997), the court held that five separate utterances of the word 'nigger' directly to the plaintiff were insufficient to establish a hostile work environment claim.  *See also, Smith v. Beverly Health and Rehabilitation Serv., Inc.*, 978 F. Supp. 1116 (N.D. Ga. 1997) (holding that a several utterances of racial epithets by a supervisor were insufficient to support hostile work environment claim); *McCray v. DPC Indus., Inc.*, 942 F. Supp. 288 (E.D. Tex. 1996) (holding that five uses of the terms "black Yankee" and "son," two racial jokes, and the use of the word "nigger" were insufficient to establish a hostile work environment claim).[150]

Similarly, In *Johnson v. TCB Constr. Co.*, the Fifth Circuit found there was insufficient evidence to establish a racially hostile work environment where a supervisor's comment that the plaintiff was just "like a damn n****r" was isolated; there was no

---

[148] *See* Rec. Doc. No. 25-2 at 12 (Deposition of Sonia Clark, p. 107).
[149] *See Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986); *Lauderdale v. Tex. Dep't of Criminal Justice, Inst. Div.*, 512 F.3d 157, 163 (5th Cir. 2007).
[150] No. 97-1620, 1998 WL 419716 at * 9 (E.D. La. July 21, 1998).
Document Number: 48169

evidence of the objective effect of that comment on the plaintiffs work performance; and although there was evidence that the supervisor frequently used the term "n****r," those other comments were not uttered in the plaintiffs presence, and there was no evidence that they affected the plaintiff's job.[151]

Plaintiff also fails to demonstrate a hostile work environment based on the alleged racially charged comments to co-workers, not made in Plaintiff's presence, and of which she was unaware during her employment with RCX. In *Celestine v. Petroloeos de Venezuela SA.*,[152] the plaintiff relied upon the racial harassment claims heard by others to support his hostile work environment claim.[153] The Fifth Circuit classified the racial harassment heard by other employees as "hearsay; things that other employees told him[.]"[154] The Fifth Circuit upheld the district court's dismissal of the plaintiff's hostile work environment claims in *Celestine* because, as the "[plaintiff] established *no* act adverse *to him* [], he could not establish a hostile work environment claim."[155] Applying the standard articulated in *Celestine*, it is clear that Plaintiff cannot rely on the allegedly racist comments by Huckins towards other RCX employees, of which she has no personal knowledge and that were not directed to or overheard by Plaintiff, to meet her hostile work environment *prima facie* burden.[156] Certainly, the Court in no way condones Huckins'

---

[151] 334 Fed. Appx. 666, 671 (5th Cir. 2009)

[152] 108 Fed. Appx. 180 (5th Cir. 2004).

[153] *Id.* at 187-88.

[154] *Id.* at 187.

[155] *Id.* at 188.

[156] Notably, courts have routinely excluded evidence of complaints of other employees as they are irrelevant to a plaintiff's ability to establish her own discrimination claim, and because such evidence would result in courts conducting "a series of mini trials." *Montgomery v. Sears Roebuck & Co.*, 2010 WL 2773238 at *2 (W.D. La. July 12, 2010)("Further, allowing the jury to hear the other employees' complaints would prejudice Sears and result in "mini-trials" on whether each complaint was valid. *See Wyvill v. United Companies Life Ins. Co.*, 212 F.3d 296, 303 (5th Cir. 2000))"; *see also Hardy*, 1998 WL 419716 at *5.

Document Number: 48169

alleged discriminatory conduct; however, it simply fails to satisfy the hostile work environment standard applicable to this case.

## III.   CONCLUSION

For the reasons set forth above, the *Motion for Summary Judgment*[157] filed by Defendants is GRANTED.   Plaintiff's case is dismissed with prejudice.   The Pretrial Conference set for October 30, 2018, and the Jury Trial set to begin on November 13, 2018 are hereby CANCELED.

*Judgment* shall be entered accordingly.

**IT IS SO ORDERED.**

Baton Rouge, Louisiana, this 22nd day of October, 2018.

_____

**SHELLY D. DICK**
**CHIEF DISTRICT JUDGE**
**MIDDLE DISTRICT OF LOUISIANA**

---

[157] Rec. Doc. No. 24.
Document Number: 48169